UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KERRI LYNN LONC,

      Plaintiff,                       Civil Action No. 18-10514

           v.                    District Judge Matthew F. Leitman
                                  Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## **REPORT AND RECOMMENDATION**

     Plaintiff Kerri Lynn Lonc ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #12] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #11] be DENIED.

## PROCEDURAL HISTORY

On February 4, 2015, Plaintiff applied for DIB, alleging disability as of December 13, 2011 (Tr. 157).  After the initial denial of her claim, Plaintiff requested an administrative hearing, held on October 3, 2016 in Livonia, Michigan (Tr. 29).  Administrative Law Judge ("ALJ") Mary S. Connolly presided.  Plaintiff, represented by attorney Gerald Skupin, testified (Tr. 33-46), as did Vocational Expert ("VE") Larissa A. Boase (Tr. 16, 47-49).  On November 16, 2016, ALJ Connolly found Plaintiff not disabled (Tr. 16-24).  On December 15, 2017, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed the present action on February 13, 2018.

## BACKGROUND FACTS

Plaintiff, born October 26, 1968, was 48 at the time of the administrative decision (Tr. 24, 157).  She graduated from high school and worked previously as a secretary and stocker (Tr. 186).  She alleges disability as a result of left shoulder problems (Tr. 185).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived in Livonia, Michigan with her husband and two children (Tr. 33-35).  She sustained a workplace shoulder injury on December 13, 2011 and settled a case against her employer for $30,000 (Tr. 34).  In 2012 through 2014, she worked "on and off" as a greeter at JCPenney (Tr. 34).  She worked for around 20 hours a week (Tr. 35).  She attempted unsuccessfully to work as a cashier (Tr. 34).  She was able to drive (Tr. 35).

In response to questioning by her attorney, Plaintiff reported that she was unable to work as a cashier due to her inability to use her left arm to bag purchases (Tr. 35). She was also unable to hold her arm up long enough to use a computer (Tr. 35). While working as a greeter, she held her left arm at her side or in a pocket (Tr. 36). When not at work, she propped her left arm up with a pillow and alternatively applied ice and heat to her shoulder up to five times a day (Tr. 36). The shoulder pain radiated to her neck and down her back (Tr. 36). She was unable to exercise her shoulder for more than a minute due to pain (Tr. 37).

Plaintiff had undergone around 140 physical therapy sessions before her most recent surgery (Tr. 37). The therapy helped to avoid shoulder stiffness (Tr. 37). Wearing a sling increased her muscle stiffness (Tr. 38). She stopped therapy after failing to experience further improvement (Tr. 38). In 2016, she scheduled a consultation with Dr. Carpenter to see if she could increase her shoulder mobility (Tr. 39). Dr. Carpenter advised her to "let it go for another year" and avoid physical therapy and shoulder exercises (Tr. 39-40).

Due to the shoulder pain, Plaintiff experienced sleep disturbances and daytime drowsiness (Tr. 40). She was unable to use a blow dryer, fold clothes, or get dishes out of the cupboard (Tr. 40). The shoulder condition caused neck and mid-back pain (Tr. 41). She experienced back discomfort from standing and walking (Tr. 42). She experienced diabetes but the condition was well managed (Tr. 42). She had also been diagnosed with a generalized anxiety disorder in March, 2016 but had not received mental health treatment (Tr. 42). Her activities were not limited because of anxiety (Tr. 42-43).

On a typical day, Plaintiff showered, sat, prepared breakfast, sat, and iced/heated the shoulder (Tr. 43). She took her daughter to the grocery store with her due to the inability to push a grocery cart (Tr. 43). The shoulder condition had worsened since the 2011 injury (Tr. 43). She participated in social media, communicated with others online, and was able to text (Tr. 44). She attended church twice a week but did not engage in other non-internet social activity (Tr. 44). She visiting her extended family "up north" on occasion (Tr. 45). She was unable to drive the entire distance but could make the trip as a passenger (Tr. 45). She did not experience cardiac issues (Tr. 46).

### B. Medical Evidence

#### 1. Records Related to Plaintiff's Treatment[1]

February, 2011 records by Theresa Poppe, M.D. note Plaintiff's report of back problems but an unremarkable MRI of the lumbar spine (Tr. 729). In December, 2011, Plaintiff sought emergency treatment one day after feeling a "tear" of the left shoulder while lifting a box at work (Tr. 292). She showed a good range of shoulder motion (Tr. 285). February, 2012 records by Jeffrey E. Lawley, D.O. note that she was currently restricted to lifting 20 pounds with "avoidance of over-the-shoulder" work with the left hand (Tr. 289). He noted that an MRI of the left shoulder taken after the accident showed left rotator cuff tendinosis with a full thickness tear of the supraspinatus tendon (Tr. 287-289, 310, 456, 764). Plaintiff exhibited a limited ability to reach with the left upper extremity (Tr. 290).

---

[1]Treatment unrelated to the arguments for remand have been reviewed in full, but are omitted from the present discussion.

On March 5, 2012, Dr. Lawley performed an arthroscopic rotator cuff repair (Tr. 313-314, 318-319). June, 2012 physical therapy records note Plaintiff's history of back pain predating the December, 2011 injury by several years (Tr. 508). Plaintiff denied limitations in walking, driving, or in cognitive functioning (Tr. 509). In July, 2012, Plaintiff underwent a followup procedure for adhesive capsulitis (frozen shoulder) (Tr. 329, 331-332). Physical therapy records note a "good" rehabilitation potential (Tr. 581). Physical therapy records and Dr. Lawley's treating notes from the next month note Plaintiff's increased range of shoulder motion (Tr. 364, 538). Dr. Lawley directed her to continue performing physical therapy and daily home exercises (Tr. 364). He noted that Plaintiff could return to work "with temporary restrictions which include lifting no more than five pounds" on the left and a preclusion on "repetitive or excessive use of [the] left upper extremity" and "over-the-shoulder work with the left hand" (Tr. 364). Physical therapy records from later the same month note that Plaintiff returned to work with lifting restrictions (Tr. 546).

At the end of August, 2012, Plaintiff stopped working due to pain but resumed work in the middle of September, 2012 (Tr. 554). Physical therapy records from November, 2012 note her report that she "overuse[d]" her shoulder (Tr. 572). She exhibited an improved ability to stretch (Tr. 572). In October, 2012, Jeffrey D. Shapiro, M.D. noted Plaintiff's complaints of continued pain but observed 5/5 strength in resistant maneuvers (Tr. 648). He issued an off work note (Tr. 648). In December, 2012, Dr. Shapiro performed an arthroscopic decompression procedure (Tr. 600, 608-612). A post-operative examination showed a normal

range of shoulder motion (Tr. 615). He issued "off work" notes on December 17, 2012, January 21, 2013, March 4, 2013, and on April 15, 2013 (Tr. 644-647). January, 2013 physical therapy records note an increased range of motion (Tr. 807). April, 2013 physical therapy records note that Plaintiff was able to reach slowly overhead but was unable to lift objects overhead (Tr. 836). In May, 2013, Dr. Shapiro performed a surgical procedure to address the condition of adhesive capsilitis (Tr. 625, 633). Physical therapy notes from the same month note reports of level "two" or "three" pain on a one to ten scale (Tr. 945). In June through September, 2013, Dr. Shapiro limited Plaintiff to "one arm work only" (Tr. 641-643, 884). In September, 2013, Plaintiff reported that the shoulder was "stiff but better" (Tr. 895). In October, 2013, Dr. Shapiro noted that Plaintiff had made improvement in physical therapy but found that she should remain off work until "reevaluation in six weeks" (Tr. 640). Physical therapy records from the same month through January, 2014 note her report of level "two" or "three" pain with an occasional "four" (Tr. 901-920, 950, 952). In December, 2013, Dr. Shapiro found that Plaintiff should be off work "one additional month" while undergoing physical therapy (Tr. 639). On January 6, 2014, Dr. Shapiro found that Plaintiff should remain off work for the next six weeks (Tr. 638). He found that she should return for treatment "as necessary" (Tr. 638). March, 2015 physical therapy records note Plaintiff's report of level "three" through "five" pain (Tr. 1023, 1030). In May, 2015, Dr. Poppe referred Plaintiff for an orthopedic consultation (Tr. 1114). A May, 2015 MRI of the shoulder showed no rotator cuff tear but a tear through the base of the superior glenoid labrum (Tr.

1055).  The same month, J. David Denzin, M.D. noted Plaintiff's report of a gradual increase in shoulder pain over the previous three months (Tr. 1056).  He opined that athroscopic surgery for repair of the labral tear could be helpful (Tr. 1059).  A post-surgical examination from the following month was unremarkable (Tr. 1060).  The following month, Plaintiff reported that she reinjured the shoulder (Tr. 1061).  Dr. Denzin advised "a gradual resumption of her usual activities" (Tr. 1061).  In August, 2015, Plaintiff reported mild improvement with injections (Tr. 1062).  She demonstrated good strength (Tr. 1062).  In September, 2015, Dr. Denzin opined that Plaintiff should continue physical therapy, noting that the continued pain was attributable to adhesive capsulitis (Tr. 1063).  In October, 2015,  Dr. Denzin noted Plaintiff's report of continued shoulder pain but observed good strength (Tr. 1064).

December, 2015 records by Dr. Poppe note a referral for physical therapy (Tr. 1097). In June, 2016, orthopedic surgeon James Ely Carpenter, M.D. opined that "a sixth shoulder surgery would [not] be of benefit to her at this time," recommending instead that the shoulder should be given "more time" to heal (Tr. 1171, 1208-1211).  He noted "satisfactory cuff strength" and a normal motor and neurological examination (Tr. 1209).  He noted that "postoperative stiffness" was "more prevalent in diabetics" (Tr. 1210).  He noted "no further surgical recommendation" with followup on an "as needed" basis (Tr. 1210).

## 2. Non-Treating Records

In May, 2015, Tariq Mahmood, M.D. performed a non-examining assessment of the treating records on behalf of the SSA, finding that Plaintiff could lift or carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 61-62).  He found that Plaintiff was limited to occasional reaching with the right upper extremity[2] (Tr. 62).  He concluded that the limitations indicated by the treating records did not preclude an adjustment to "other work" (Tr. 63).

## C. Vocational Expert Testimony

VE Larissa Boase classified Plaintiff's former work as a church secretary as skilled and exertionally sedentary (sedentary to medium as performed) and stock clerk, semiskilled/heavy[3] (Tr. 47).  The ALJ then described a hypothetical individual of Plaintiff's age, education, and

---

[2]

Dr. Mahmood's statement that Plaintiff experienced right rather than left arm limitations is clearly a scrivener's error (Tr. 62).  His summary of the treating records correctly states that the disability application is based on the left upper extremity limitations (Tr. 56).

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

work experience:

> [W]ould be limited to light work but would have an additional limitation of no
> overhead use of the left non-dominant upper extremity for reaching, lifting or
> all tasks; and occasional[] use of . . . the left non-dominant upper extremity for
> fingering, handling, manipulating, pushing and pulling; and a maximum lift of
> 10 pounds occasionally (Tr. 47-48).

In response, the VE testified that the above limitations would preclude Plaintiff's past

relevant work but would allow for the light, unskilled work of a greeter (100,000 positions

in the national economy) and usher (100,000) (Tr. 48).  The VE testified that if the above

limitations were amended to limit the individual to sedentary work, she could perform the job

of surveillance system monitor (50,000) (Tr. 48).

The VE testified that if the same individual working at either the light or sedentary

exertional level were required to heat/ice the shoulder for four or five times a day for

approximately 10 minutes at unscheduled intervals, and take an unscheduled one-hour break

over the course of the workday, all work would be precluded (Tr. 49).  In response to

questioning by Plaintiff's counsel, the VE testified that the need to miss more than two days

of work each month would also preclude all full-time work (Tr. 49).  The VE testified that her

testimony was consistent with the information found in the *Dictionary of Occupational Titles*

("*DOT*") except for the testimony regarding breaks and the need to ice or heat which was

based on her own professional knowledge (Tr. 49).

-9-

**D. The ALJ's Decision**

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "left shoulder rotator cuff tear, status-post surgical repair and manipulation, back pain, and diabetes" but that none of the conditions met or equaled any impairment listed in 20 C.R.F. Part 404, Subpart P, Appendix 1 (Tr. 18-19). She noted that while Plaintiff alleged the inability to use a computer, "nothing in the medical record" supported that allegation (Tr. 19). The ALJ cited Plaintiff's acknowledgment that she was able to text (Tr. 19).

The ALJ found that Plaintiff retained the following residual functional capacity ("RFC") for light work with the following additional limitations:

> [N]o overhead use of left non-dominant upper extremity; occasional . . . use of the left non-dominant upper extremity for all tasks at desk level, such as fingering, handling, manipulation, pushing, and pulling; and could lift 10 pounds maximally with the left non-dominant upper extremity (Tr. 19).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform her past relevant work, she could work as a greeter and usher (Tr. 22-23, 48).

The ALJ discounted Plaintiff's alleged degree of limitation. She noted that the treating records did not support the alleged need for a pillow to support the left arm at all times while sitting or the complete inability to use the left arm (Tr. 21). She cited Plaintiff's December, 2015 report of "intermittent" and "fluctuating" pain (Tr. 21).

-10-

The ALJ cited August, 2012 records showing good results with physical therapy and home exercises following March and July, 2012 shoulder surgery (Tr. 20). She noted that arthroscopic surgery in December, 2012 and May, 2013 shoulder manipulation for adhesive capsulitis improved Plaintiff's range of motion and functionality (Tr. 20). The ALJ noted that Dr. Shapiro's 2014 opinion that Plaintiff should remain off work "one more month" was temporary and pertained to the ability to perform past work rather than "other jobs in the economy" (Tr. 20). She cited January, 2014 examination records showing a mild range of motion limitation (Tr. 20).

The ALJ also noted that Plaintiff experienced increased strength and range of motion following a June, 2015 arthroscopic procedure with debridement (Tr. 20-21). She noted that Plaintiff experienced good results from physical therapy (Tr. 21). The ALJ observed that in June, 2016, Dr. Carpenter recommended only conservative treatment (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Substantial Evidence Supports the ALJ's Findings

Plaintiff argues that the ALJ erred by declining to interpret Dr. Shapiro's October, 2013 "off work" note as a finding of long-term disability. *Plaintiff's Brief,* 9-10, *Docket # 11,* Pg ID 1265. Plaintiff also faults the ALJ for according only "some weight" to Dr. Lawley's October, 2012 assessment, arguing that the ALJ erred by declining to adopt Dr. Lawley's five-pound lifting restriction. *Id.* at 10-11.

Also before the Court is evidence submitted after the ALJ's November 16, 2016 determination. Plaintiff's motion for summary judgment is accompanied by treating notes created between November 1, 2017 and January 22, 2018. *Docket #11-2.* Plaintiff's response to Defendant's motion for summary judgment includes a June, 2018 "disability" opinion and August, 2018 functional assessment by Plaintiff's long-term physician Dr. Poppe. *Docket #13-2.*

### A. The ALJ's Discussion of the Treating Evidence

Plaintiff relies on Dr. Shapiro's October, 2013 "off work" note to support her contention that she is unable to perform the exertionally light work of a greeter. *Plaintiff's Brief* at 9 (*citing* Tr. 640). She notes that Dr. Shapiro, a treating source, found that she should take time off her job as a greeter so she could "concentrate more significantly" on

making progress in the shoulder condition. *Id.* Plaintiff also faults the ALJ for "rejecting" Dr. Lawley's five-pound lifting restriction. *Id.* at 10-11.

Case law in effect at the time of Plaintiff's application requires that "if the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v.Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)).

Plaintiff's argument fails on the obvious basis that the ALJ did not reject the opinions by either Dr. Shapiro or Dr. Lawley. Contrary to Plaintiff's contention that the ALJ improperly discounted Dr. Shapiro's findings, the ALJ correctly noted that Dr. Shapiro's extension of the time off work "was intended to allow [Plaintiff] to attend physical therapy and reach maximum improvement" (Tr. 20). The ALJ noted "no evidence" that Dr. Shapiro imposed permanent restrictions on Plaintiff's work-related abilities (Tr. 20). Likewise, the ALJ noted that while in 2012 Dr. Lawley imposed a five-pound lifting restriction following surgery, "there is no indication that Dr. Lawley's [post-surgery] restriction was meant to be permanent" (Tr. 20). Indeed, Dr. Lawley's August, 2012 records state explicitly that the five-pound lifting limitation was a "temporary restriction[]" (Tr. 364). Plaintiff's contention that the ALJ was required to find that temporary restrictions imposed by Drs. Shapiro and Lawley were permanent is without merit.

-14-

My own review of the record is consistent with the ALJ's findings. Dr. Shapiro renewed his original October 16, 2013 off work opinion on December 4, 2013 and January 6, 2014 (Tr. 638-639). Dr. Shapiro's January 6, 2014 note states that Plaintiff should remain off work for another six weeks (Tr. 638). The record does not contain subsequent off work notes by Dr. Shapiro. The "off work" notes, considered in tandem, state that Plaintiff was unable to work between October 16, 2013 and mid-February, 2014 (Tr. 638-640). However, Dr. Shapiro's finding that Plaintiff was unable to work as a greeter for approximately four months cannot be construed as a "disability" opinion under 42 U.S.C. §423(d)(1)(A) which requires a showing that the claimant is incapable of gainful activity "for a continuous period of not less than 12 months." Dr. Shapiro's finding that Plaintiff was unable to perform the job of greeter for one four-month period does not stand at odds with the VE's finding that Plaintiff was capable of a range of exertionally light work (Tr. 48). Likewise, Dr. Lawley's August, 2012 imposition of a "temporary" five-pound lifting limitation cannot be interpreted to state anything other than a short-term restriction on Plaintiff's work-related abilities (Tr. 364).

Plaintiff's remaining criticisms of the ALJ's findings do not present grounds for remand. She faults the ALJ for noting that the admitted ability to text undermined the claim of disabling left upper extremity limitation, noting that "there was no testimony that [she] used both hands when she texted" *Plaintiff's Brief* at 10 (*citing* Tr. 19). However, Plaintiff's testimony that she texted and participated in social media is unaccompanied by any claim that

she was limited to texting with one hand (Tr. 44). Given that Plaintiff did not claim that she was required to text with only one hand, the ALJ did not err in noting that the ability to text undermined her claims of disabling left-sided limitation. Consistent with my own review of the records, the ALJ noted that while Plaintiff testified that she was required to prop her left arm up on a pillow most of the time (Tr. 36), the treating records contained no reference to such a limitation (Tr. 21). While Plaintiff testified to excruciating, constant pain, the physical therapy records note her report of mostly "two" to "three" level pain (Tr. 901-920, 945, 950, 952).

Plaintiff also contends, in effect, that the RFC for light work with a limitation to lifting 10 pounds is internally inconsistent, noting that exertionally light work generally requires lifting of up to 20 pounds (Tr. 19). *Plaintiff's Brief* at 11 (*citing* § 404.1567). However, the finding that Plaintiff was capable of light work is not defeated by the ALJ's finding that she was limited to lifting only 10 pounds. In regard to light exertionally work, SSR 83-10 states that "[e]ven though the weight lifted in a particular light job may be *very little*, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs. 1983 WL 31251, at *5 (January 1, 1983). Moreover, the treating records are absent any indication that Plaintiff was unable to stand or walk for six hours in an eight-hour day as required for light work. Consistent with SSR 83-10, the VE found that a restriction to lifting 10 pounds did not preclude a significant range of light work (Tr. 48). Because the VE's job testimony constitutes substantial evidence

in support of the job findings, the Step Five determination should remain undisturbed.

### B.  Evidence Submitted After the ALJ's November 16, 2016 Determination

Plaintiff's motion for summary judgment is accompanied by 19 pages of treating records by Dr. Carpenter dated November 1, 2017 to January 22, 2018.  *Docket # 11-2.*  Dr. Carpenter's records note that Plaintiff continued to experience left shoulder pain.  *Id.* at pg. 6 of 19.  The records state that Plaintiff demonstrated normal rotator cuff strength and "no significant osteoarthrosis."  *Id.* at 7.  Dr. Carpenter noted the absence of "any obvious pathology that could be corrected with a surgery."  *Id.* at 8.

Plaintiff's response to Defendant's motion for summary judgment is accompanied by an August, 2018 "Left Shoulder Residual Functional Capacity Questionnaire" by Dr. Poppe stating that due to adhesive capsulitis, Plaintiff experienced level "eight" to "ten" pain on a one to ten scale and was unable to perform the exertionally requirements of even sedentary work.  *Docket # 13-2* at pgs. 1, 3 of 14.  Also included is a June, 2018 letter by Dr. Poppe summarizing Plaintiff's medical history.  *Id.* at 5.  Dr. Poppe's letter concludes by stating that Plaintiff was precluded "from returning to the workplace."  *Id.* at 6.

Evidence submitted after an ALJ's decision is analyzed under the sixth sentence of 42 U.S.C. § 405(g) which states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the "materiality"

requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988). This Court may consider the additional evidence only for purposes of determining whether remand for consideration of the newer evidence is appropriate under the sixth sentence of § 405(g).

A "Sentence Six" remand is unwarranted for multiple reasons. First the earliest of the "newer" records post-dates the administrative decision by almost one year. Plaintiff's condition subsequent to the date of the ALJ's decision is intrinsically immaterial to the issue of whether she was disabled on or before November 16, 2016. *Sizemore*, 865 F.2d at 712. If Plaintiff believes that her condition has worsened since the November, 2016 determination, her remedy is to make a new application for benefits. *Id.* Further, Dr. Carpenter's November, 2017 findings simply restate his previous position (considered by the ALJ) that Plaintiff was not a candidate for shoulder surgery. As such, his newer findings would be unlikely to result in a different disposition upon remand. *Sizemore.*

As to Dr. Toppe's 2018 findings, neither the June, 2018 letter nor August, 2018 assessment state an onset of disability date, much less a date preceding the November 16, 2016 determination. Even assuming that Dr. Toppe's findings referred to Plaintiff's condition prior to the November 16, 2016 determination, Plaintiff has not provided "good cause" for failing to procure Dr. Toppe's "disability" letter and assessment prior to the ALJ's

determination.  Post-decision evidence created for the purpose of rebutting an ALJ's decision does not satisfy the "good cause" requirement of the sixth sentence of § 405(g). *Haney v. Astrue*, 2009 WL 700057, *6 (W.D. Ky. March 13, 2009)("[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability")(*citing Thomas v. Secretary*, 928 F.2d 255, 260 (8th Cir., 1991)); *see also Ledford v. Astrue*, 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. December 19, 2008)(*citing Martin v. Commissioner of Social Security*, 170 Fed.Appx. 369, 374-75, 2006 WL 509293 *5 (6th Cir. March 1, 2006)).  Plaintiff's failure to provide any explanation, much less "good cause for the untimely submissions of the newer material forecloses a "Sentence Six" remand.

In closing, my recommendation to grant Defendant's motion should not be read  to trivialize Plaintiff's legitimate problems resulting from his shoulder condition.  However, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative  level and should not be disturbed.  *Mullen v. Bowen*, *supra*,.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #12] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #11] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

   s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 28, 2019

-20-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on February 28, 2019, electronically and/or by U.S. mail.

<u>s/Carolyn M. Ciesla</u>
Case Manager to the
Honorable R. Steven Whalen
